**CHEMICAL TRANSPORTATION CORPORATION, Plaintiff,**

v.

**METROPOLITAN PETROLEUM CORPORATION and George H. Rohrs, Defendants.**

United States District Court
S. D. New York.
Nov. 13, 1964.

Foley & Grainger, New York City, for plaintiff. William F. Norton, Jr., Walter A. Darby, Jr., New York City, of counsel.

Donovan, Leisure, Newton & Irvine, New York City, for defendants. Robert M. Loeffler, New York City, of counsel.

COOPER, District Judge.

Defendants move to dismiss the complaint for lack of subject matter jurisdiction under F.R.Civ.P. 12(h) and 41 (b) on the ground that there is no diversity of citizenship between the parties.

The amended complaint, served on January 26, 1960, asserts seven claims for relief based upon breach of contract, negligence and fraud.[1] The sole jurisdictional basis is the alleged diversity of citizenship of the parties.

The amended complaint alleges that plaintiff is a corporation organized and existing under the laws of the Republic of Liberia (Par. 1); defendant Metropolitan Petroleum Corporation (hereinafter "Metropolitan") is a corporation organized and existing under the laws of the State of New York (Par. 2); and defendant George H. Rohrs is a resident of the State of New York (Par. 40).

The amended complaint is silent as to the principal place of business of either plaintiff or Metropolitan, or as to the citizenship of defendant Rohrs. By their amended answer, defendants are deemed to admit the truth of the allegations of the aforementioned paragraphs 1, 2 and 40 of the amended complaint.

Defendants contend that Section 1332 (c) of the Judicial Code [28 U.S.C. § 1332(c)] applies to plaintiff; plaintiff and defendants have their principal place of business in New York;[2] and this Court thus lacks subject matter jurisdiction in that all of the parties are New York citizens within the meaning of Section 1332 of the Judicial Code.

Plaintiff argues that as an alien it can sue "defendants of the United States" in this district; Section 1332(c) does not apply to alien corporations; and even if it does, as a matter of fact, its principal place of business is in Liberia.

THE STATUTE

§ *1332  Diversity of citizenship; amount in controversy; costs*

(a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs, and is between—

(1) citizens of different States;

(2) citizens of a State, and foreign states or citizens or subjects thereof; and

(3) citizens of different States and in which foreign states or citizens or subjects thereof are additional parties.

(b) Except when express provision therefor is otherwise made in a statute of the United States, where the plaintiff who files the case originally in the Federal courts is finally adjudged to be entitled to recover less than the sum or value of $10,000, computed without regard to any setoff or counterclaim to which the defendant may be adjudged to be entitled, and exclusive of interest and costs, the district court may deny costs to the plaintiff and, in

---

1. The action was commenced by the filing of a complaint on August 28, 1959.

2. Defendants state that plaintiff is a closed corporation now owned and controlled by its President and sole stockholder, Charles Valentine; it was organized to fulfill contractual arrangements for the transportation of chemicals; it owns an ocean-going vessel engaged in such transportation in foreign trade under long-term charter to third persons; and although Mr. Valentine has submitted an affidavit saying plaintiff's principal place of business was in Monrovia, Liberia, at the time this action was instituted, his prior oral testimony before trial proves it was in New York City. At that examination, when asked about the offices of plaintiff, Mr. Valentine testified, "Where I went, it had to go." It further appears from the same oral testimony that on or about May 1, 1956, Mr. Valentine opened offices for plaintiff in New York City.

addition, may impose costs on the plaintiff.

(c) For the purposes of this section and section 1441 of this title, a corporation shall be deemed a citizen of any State by which it has been incorporated and of the State where it has its principal place of business: *Provided further*, That in any direct action against the insurer of a policy or contract of liability insurance, whether incorporated or unincorporated, to which action the insured is not joined as a party-defendant, such insurer shall be deemed a citizen of the State of which the insured is a citizen, as well as of any State by which the insurer has been incorporated and of the State where it has its principal place of business.

(d) The word "States", as used in this section, includes the Territories, the District of Columbia, and the Commonwealth of Puerto Rico. As amended July 26, 1956, c. 740, 70 Stat. 658; July 25, 1958, Pub.L. 85–554, § 2, 72 Stat. 415; Aug. 14, 1964, Pub.L. 88–439, § 1, 78 Stat. 445.[3]

### APPLICABILITY OF § 1332(c)

The threshold issue is whether § 1332 (c), added to the diversity statute in 1958,[4] applies to corporations incorporated in foreign countries (hereinafter "alien corporations") as well as those organized and existing under the laws of a State in the United States (hereinafter "domestic corporations").

For more than a century, the rule prevailed that the state of incorporation was the conclusive factor in determining corporate citizenship for diversity purposes. See Hart and Wechsler, The Federal Courts and the Federal System 914–6 (1953); 1 Moore, Federal Practice, ¶0.60[8.–4]; Wright, Federal Courts, § 27 (1963). First established with respect to domestic corporations in Louisville, Cincinnati & Charleston Ry. Co. v. Letson, 2 How. 497, 11 L.Ed. 353 (1844), cf. St. L. & S. F. Ry. Co. v. James, 161 U.S. 545, 16 S.Ct. 621, 40 L.Ed. 802 (1896), the rule was applied to alien corporations in National Steamship Co. v. Tugman, 106 U.S. 118, 121, 1 S.Ct. 58, 27 L.Ed. 87 (1882); Barrow Steamship Co. v. Kane, 170 U.S. 100, 18 S.Ct. 526, 42 L.Ed. 964 (1897).

Growing dissatisfaction with abuses and inequities arising out of the development of diversity jurisdiction, particularly with respect to corporations,[5] led to the enactment of § 1332(c). It provided that, for diversity purposes, "a corporation shall be deemed a citizen of any State by which it has been incorpo-

---

**3.** The proviso clause of § 1332(c), approved August 14, 1964, applies only to causes of action arising after the date of enactment. Pub.L. 88–439, § 2, 78 Stat. 445.

**4.** Pub.L. 85–554, § 2, 72 Stat. 415; 1 U.S. Cong.Code and Adm.News, 85th Cong. (1958) p. 487; Legislative History: 2 U.S.Cong.Code and Adm.News, 85th Cong. (1958) pp. 3099–3136.

**5.** Sen.Rep. No. 1830, 85th Cong., 2d Sess., to accompany HR 11102, 2 U.S.Cong.Code and Adm.News (1958), pp. 3099, 3101–3102, stated:

[The] fiction of stamping a corporation a citizen of the State of its incorporation has given rise to the evil whereby a local institution, engaged in a local business and in many cases locally owned, is enabled to bring its litigation into the Federal courts simply because it has obtained a corporate charter from another State. (See Black and White Taxicab and Transfer Company v. Brown and Yellow Taxicab and Transfer Co., 276 U.S. 518, 48 S.Ct. 404, 72 L.Ed. 681 (1928).) This circumstance can hardly be considered fair because it gives the privilege of a choice of courts to a local corporation simply because it has a charter from another State, an advantage which another local corporation that obtained its charter in the home State does not have.

* * * It appears neither fair nor proper for such a corporation to avoid trial in the State where it has its principal place of business by resorting to a legal device not available to the individual citizen.

See also 2 U.S.Cong.Code and Adm.News, supra, pp. 3108, 3111–12, 3119–20, 3126–7, 3132–5.

rated and of the State where it has its principal place of business."

The application of 28 U.S.C. § 1332 (c) to an alien corporation is an unresolved issue. Moore and Weckstein, Corporations and Diversity of Citizenship Jurisdiction: A Supreme Court Fiction Revisited, 77 Harv.L.Rev. 1426, 1435. No explicit consideration was given by Congress to the effect of the amendment upon alien corporations, and the only reported opinion dealing with the problem indicates, by a scholarly analysis of the provision's wording, that its scope is limited to domestic corporations. Eisenberg v. Commercial Union Assur. Co., 189 F.Supp. 500 (S.D.N.Y.1960).

In Eisenberg, Judge Dimock noted (at p. 502):

* * * the statute differentiates between States of the United States and foreign states by the use of a capital S for the word when applied to a State of the United States. Subdivision (c), therefore, in dealing with the *place of incorporation* refers only to a corporation incorporated in a State of the United States. When subdivision (c) goes on to deal with *principal place of business* it refers to the same corporation and thus only to a corporation incorporated in a State of the United States. The subdivision is not susceptible of the construction as if it read "all corporations shall be deemed citizens of the States by which they have been incorporated and of the States where they have their principal places of business." Unless a corporation is incorporated by a State of the United States it will not be deemed a citizen of the State where it has its principal place of business.[6]

Defendants urge, however, that in § 1332(c), no clear purpose existed, as in § 1332(a), to distinguish between foreign "states" and "States" of the United States. They claim the distinction in subsection (a) was necessary to provide for various classes of diversity jurisdiction. The contention is that "even though the drafters intended the word 'States' in § 1332(c) to apply to both foreign states and States of the United States, they necessarily could use only one form of the word or the other, not both, in drafting * * *"

We find no explicit legislative history supporting such an *intent*, and cannot agree the drafters *"necessarily could use only one form of the word * * *"* (emp. added)

Congress was evidently aware when it enacted § 1332(c) that it had previously utilized the words "States" and "states" differently in § 1332(a). None of the various proposals before Congress explicitly took cognizance of this factor. Had Congress wished to have § 1332(c) apply to alien corporations, it could have provided that a corporation be deemed a citizen of the "State or foreign state" in which it was incorporated or had its principal place of business.[7] Signifi-

---

**6.** It is arguable whether the quoted portion is an alternative holding or merely dictum, in light of the statement that "[even] if I am wrong about this [interpretation] * * * [d]efendant's principal place of business is not in New York; it is in London." 189 F.Supp. at 502. We regard it an alternative holding. In any event, the strength of its analysis is equally compelling.

**7.** Defendants cite the following from Judge Dimock's opinion in Eisenberg in support of the applicability of § 1332(c):

[I]f a Bahaman corporation, for example, has located its principal place of business in New York, the inference is legitimate that it has adopted New York as its actual residence and that it is no longer entitled to be considered an outsider and to deserve the protection accorded outsiders. [i.e. resort to diversity jurisdiction of the Federal courts]. 189 F.Supp. at 502.

This statement, however, must be read in the context of Judge Dimock's opinion. It is made after it is assumed, *arguendo*, that § 1332(c) does not apply to alien corporations and the issue then under discussion is, whether the "principal place of business" for § 1332(c) purposes is the alien corporation's principal place of business in the United States or its principal place of business, considering its

cantly, a similar proposal was recently presented to the American Law Institute.[8]

Our decision, however, does not rest on technical construction of the statute alone.

We think that if § 1332(c) is to apply to alien corporations, it is for Congress and not this Court to so provide. In making such a determination, Congress may not consider the policy reasons supporting the enactment of § 1332 (c) controlling.[9] Congress, for example, might wish to determine whether diversity jurisdiction should be withdrawn from alien corporations which might not have standing to institute suits in state courts; whether applicability of § 1332 (c) to alien corporations would have a negative effect on foreign trade or commerce; or whether the alien corporation should retain a status similar to the alien individual who may invoke diversity jurisdiction despite prolonged residence in the state of which his adversary is a citizen[10] [see Breedlove v. Nicolet, 32 U.S. (7 Pet.) 413, 8 L.Ed. 731 (1833)].

██ This Court recognizes that the purpose of § 1332(c) was to restrict, and not to expand, diversity jurisdiction. Harker v. Kopp, 172 F.Supp. 180 (N.D. Ill.1959); Nayer v. Sears, Roebuck & Co., 200 F.Supp. 319 (D.N.H.1961);

Diesing v. Vaughn Wood Prods., Inc., 175 F.Supp. 460 (W.D.Va.1959); Cf. Brown v. Bodak, 188 F.Supp. 532, 533 (S.D.N.Y.1960). But in determining the scope of the restriction, the wording of the amendment, the absence of explicit Congressional consideration of the issue here involved and the absence of guiding Congressional policy on the factors outlined above, compel us to hold that § 1332(c) does not apply to alien corporations.

## THE DIVERSITY OF CITIZENSHIP ALLEGATIONS

██ Although the parties do not raise the issue, the mere allegation of diversity of residence is insufficient to support jurisdiction of this Court on the ground that there is diversity of citizenship. Russell v. New Amsterdam Cas. Co., 325 F.2d 996 (8th Cir. 1964); Telesphore Couture v. Watkins, 162 F. Supp. 727 (E.D.N.Y.1958). Paragraph 40 of the amended complaint only alleges the residence of defendant Rohrs, and the admission of such allegation in the amended answer does not satisfy the pleading requirements. Such a defect, however, particularly in view of defendant's own statement that diversity of citizenship would exist if § 1332(c) is inapplicable, is not fatal. Robillard v. A. L. Burbank & Co., 186 F.Supp. 193

---

total operations, within and without the United States. See Moore and Weckstein, p. 6 supra, p. 1435.

8. A.L.I., Study of the Divisions of Jurisdiction between State and Federal Courts, T.D. No. 2, § 1301(b) (1964). Relying on the Eisenberg case, the Commentary states that "[t]he 1958 amendment seemingly has no application to alien corporations" and proposes a new rule characterized as a change from existing law (p. 59). The need for such a change, as stated in the Commentary, is that otherwise "a group of New York businessmen for reasons of their own might * * * incorporate in Liberia although their principal place of business was in New York, and invoke federal jurisdiction in an action against a Citizen of New York" (at p. 60). Indeed, defendants here contend that this action presents such a situation. See note 2, supra.

9. For the range of views and theories supporting a general diversity jurisdiction, see A.L.I., supra, note 5, at pp. 49–58, 150–5; 2 U.S.Cong.Code and Adm.News, 85th Cong. (1958) pp. 3116–3120.

10. Plaintiff herein relies on the propositions that venue for an alien corporation's suit in a federal court lies in the district where all defendants reside [Du Roure v. Alvord, 120 F.Supp. 166 (S.D.N.Y.1954)]; § 1332(a) does not include stateless persons [Butler v. Penix, 171 F.2d 761 (5th Cir. 1949)]; and for purposes of removal under § 1441, citizenship is synonymous with domicile [Fisher v. United Airlines, 218 F.Supp. 223 (S.D.N.Y. 1953)]. We find unnecessary any disposition of these points in light of our analysis above.

(S.D.N.Y.1960); Cf. Morris v. Gilmer, 129 U.S. 315, 9 S.Ct. 289, 32 L.Ed. 690 (1889); Hellebrand v. Hoctor, 222 F. Supp. 81, 83 (E.D.Mo.1963).

Plaintiff is given leave, within 10 days of service upon it of a copy of this order, to amend the amended complaint in respect of the citizenship of defendant Rohrs.

Defendants' motion is denied in all respects.

This shall be considered an order; settlement thereof is unnecessary.

So ordered.